O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TAMI S. SMITH,** ) | NO. CV 10-4913-MAN |
| ) | |
| **Plaintiff,** ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | AND ORDER |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

Plaintiff filed a Complaint on July 7, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's applications for a period of disability ("POD"), disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On July 23, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on May 11, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, remanding for the correction of legal errors; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for

further administrative development. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff, who was born on June 12, 1964 (Administrative Record ("A.R.") 24),[1] filed an application for a POD, DIB, and SSI (A.R. 79-81, 84-87). Plaintiff claims to be disabled since April 10, 2004, due to multiple sclerosis. (A.R. 79, 118.) Plaintiff has past work experience as a dental assistant and retail sales clerk. (A.R. 23, 109-11.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 66-69, 72-76), plaintiff requested a hearing (A.R. 78). On June 19, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Robert A. Evans (the "ALJ"). (A.R. 33-54.) Vocational expert Martin G. Brodwin[2] also testified. (A.R. 49-53.) On July 23, 2008, the ALJ denied plaintiff's claim (A.R. 12-25), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

///
///
///
///

---

[1] At the time of the ALJ's decision, plaintiff was 39 years old, which is defined as a younger individual. 20 C.F.R. §§ 404.1563, 416.963.

[2] Although the hearing transcript indicates that the vocational expert's name is Mr. Baldwin, the record shows that his name is Martin G. Brodwin. (A.R. 26, 33.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since April 10, 2004, the alleged onset date of the disability. (A.R. 17.) The ALJ further found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2008. (*Id.*) The ALJ determined that plaintiff has the severe impairment of multiple sclerosis. (*Id.*) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (*Id.*)[3]

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, occasional climbing, balancing, stooping, kneeling, crouching and crawling, use of the bilateral hands for grasping, gripping, and fine manipulations occasionally, and no exposure to extreme heat, wetness, unprotected heights, hazardous machinery, and extreme cold.

(A.R. 22.)

---

[3] The ALJ also determined that plaintiff's mental impairment is not severe. (A.R. 23.)

3

The ALJ concluded that plaintiff is unable to perform her past relevant work. (A.R. 18, 23.) However, having considered plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including those of information clerk or surveillance systems monitor. (A.R. 24.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (A.R. 25.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn form the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may only review the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate disability determination.'" Robbins v. Soc. Sec. Admin., 446 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ improperly evaluated the medical evidence as contained in the treating physicians' opinions. (Joint Stipulation ("Joint Stip.") at 4.)[4]

///

---

[4] Plaintiff raised two issues in the Joint Stipulation. On June 2, 2011, in a Notice of Errata, plaintiff "request[ed] that the listed Issue No. 2 within the Disputed Issue portion of the filed Joint Stipulation (Docket No. 21 at p. 4 line 5-6) be withdrawn and ignored by the Court."

**I.   The ALJ Failed To Set Forth Specific And Legitimate Reasons For Rejecting The Opinions Of Plaintiff's Treating Physicians.**

Plaintiff contends that the ALJ rejected the opinions of Yu-En Lee, M.D. and Lingaiah Janumpally, M.D. regarding the episodic nature of plaintiff's severe multiple sclerosis disorder without articulating a legally sufficient rationale for doing so. (Joint Stip. at 4-5.)  As discussed below, the ALJ erred in determining plaintiff's RFC by failing to provide specific and legitimate reasons for rejecting the opinions of plaintiff's treating physicians.

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. §§ 404.1527(d), 416.927(d).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).  The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific

and legitimate" reasons supported by substantial evidence in the record. *Id.; see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

In addition, a finding that the treating physician's opinion "is not entitled to controlling weight does not mean that the opinion is rejected." Social Security Ruling 96-2p, 1996 SSR LEXIS9 at *1, *9-*10, 1996 WL 374188, at *1, *4 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight"). In this instance, the Social Security regulations still require deference to the treating physician's opinion, but the weight accorded is governed by the factors listed in the regulations, such as the length, nature, and extent of the treatment relationship, frequency of examination, and supportability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Orn, 495 F.3d at 632-33.

The opinions of examining physicians may constitute substantial evidence upon which an ALJ may rely in assessing a claimant's RFC when they are properly supported by the medical evidence. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant). Nonexamining physician's opinions "with nothing more" cannot constitute substantial evidence. Andrews, 53 F.3d at 1042. However, this does not mean that the opinions of nonexamining sources and medical advisors are entitled to "little" or no weight. *Id*. at 1041. Reports of a nonexamining advisor "need not be discounted and may serve as substantial evidence

7

when they are supported by other evidence in the record and are consistent with it." *Id*.

Here, plaintiff was diagnosed with multiple sclerosis in January 2005.[5] (A.R. 18, 307, 345.) Following this initial diagnosis, plaintiff was prescribed oral prednisone. (A.R. 312.) On February 18, 2005, plaintiff sought a second opinion from Yu-En Lee, M.D., a neurologist, regarding the multiple sclerosis diagnosis.[6] (A.R. 307, 309.) Dr. Lee confirmed the multiple sclerosis diagnosis and prescribed Copaxone for plaintiff.[7] (A.R. 309.) Dr. Lee assessed plaintiff's prognosis as fair to poor. (A.R. 380, 385.)

Dr. Lee completed a Neurological questionnaire on June 6, 2006. (A.R. 380-382.) Dr. Lee indicated, *inter alia*, that plaintiff has: a disturbance of speech; 4/5 active movement against gravity and some resistance affected by tremor and/or weakness in the lower extremities;

---

[5] In January 2005, while in Arizona, plaintiff went to Western Arizona Regional Medical Center complaining of "right neurological symptoms of numbness and tingling in her hand, right facial numbness, and incoordination and blurriness of vision." (A.R. 347.) Plaintiff underwent an MRI. The MRI report indicated that "a demyelinating process would be a consideration" based on the reported findings. (A.R. 370.) A demyelinating process is a primary symptom of multiple sclerosis. *See* http://www.webmd.com/multiple-sclerosis/guide/rec ognizing-multiple-sclerosis?page=2.

[6] Dr. Lee is a member of Antelope Valley Neuroscience Medical Group. Lingaiah Janumpally, M.D., a neurologist, who acts along with Dr. Lee as plaintiff's treating physician, is also a member of Antelope Valley Neuroscience Medical Group. (A.R. 307.)

[7] Copaxone is a medication used to treat a type of multiple sclerosis "that occurs when symptoms appear in cycles of worsening and improvement (relapsing/remitting multiple sclerosis - MS). It is a protein that is thought to work by preventing your immune system from attacking the nerves in your brain and spinal cord." "It is not a cure for multiple sclerosis." http://www.webmd.com/drugs/drug-321-Copaxone+SubQ.aspx?drugid=321&drugname=Copaxone+SubQ&source=1.

poor balance; a need for an assistive device for balance; sensory and/or motor abnormalities; and abnormal ocular movement. (*Id.*)

In addition, Dr. Lee completed a Medical Source Statement – Physical ("MSS questionnaire") on June 6, 2006. (A.R. 384-85.) Dr. Lee indicated that plaintiff's lifting and carrying abilities are affected by multiple sclerosis. (A.R. 384.) Dr. Lee opined that plaintiff could lift and carry 20 pounds occasionally and 25 pounds frequently, and she can stand and walk, with normal breaks, at least two hours in an eight hour workday. (*Id.*) In addition, Dr. Lee noted plaintiff's history of being "tired," "fatigue[d]," and having "poor balance." (*Id.*) Furthermore, Dr. Lee opined, *inter alia*, that plaintiff: can sit, with normal breaks, for less than six hours of an eight hour workday; must alternate standing and sitting; must never climb, balance, stoop, kneel, crouch, or crawl; has no visual, auditory, or speech limitations; and does have environmental restrictions, including heights, moving machinery, temperature extremes, chemicals, and dust. (*Id.*)

Dr. Janumpally also treated plaintiff beginning in 2005.[8] (A.R. 307.) On May 13, 2008, Dr. Janumpally provided his assessment of plaintiff's condition. (A.R. 545.) Specifically, Dr. Janumpally indicated that plaintiff has:

> absent reflexes, numbness, weakness, stiffness, double vision
> or other visual disturbances, difficulty with bladder control,

---

[8] The medical record indicates that plaintiff sought medical treatment in the offices of Dr. Janumpally and Dr. Lee on February 18, 2005. (A.R. 307.) The first notation in the record regarding Dr. Janumpally's relationship with plaintiff is on July 31, 2005. (A.R. 304.)

emotional disturbances, sustained disturbance of gross and dexterous movements, sustained disturbance of gait and station, significant reproducible fatigue or motor function with substantial weakness on repetitive activity demonstrated on physical exam and inability to ambulate effectively.

(*Id.*) Moreover, Dr. Janumpally noted that plaintiff could only stand for two hours at one time. (*Id.*) Dr. Janumpally also opined that plaintiff is "[t]otally disabled until 9/30/08." (*Id.*)

In his decision, the ALJ did not give any weight to the limitations assessed in the June 6, 2006 MSS questionnaire completed by Dr. Lee; the ALJ specifically rejected "the sitting, standing, walking and postural limitations" as to which Dr. Lee opined. (A.R. 22.) The ALJ rejected Dr. Janumpally's May 13, 2008 assessment in its entirety. (A.R. 21.) In determining plaintiff's RFC, the ALJ adopted the opinion of Doojin Kim, M.D., a neurological consultative examiner, over those of plaintiff's treating physicians. (A.R. 22.) In doing so, the ALJ reasoned that the treating physician's opinions should be rejected, because: (1) the limitations assessed by Dr. Lee, and the numerous findings of Dr. Janumpally,[9] are "not supported by the treatment or

---

[9] Defendant contends that the ALJ "properly gave little weight to the check-box form opinion of Dr. Janumpally (AR 21-22,545)." (Joint Stip. at 11.) Moreover, defendant contends that: the ALJ "noted that Dr. Janumpally's check box form was not supported by his treatment notes, or with the medical record as a whole"; and "Dr. Janumpally has provided very little in the way of treatment notes, and it appears that the ALJ identified records from Dr. Lee as those from Dr. Janumpally." (*Id.*) However, a reviewing court cannot affirm the denial of benefits based on a reason not stated or a finding not made by the ALJ, and defendant's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is unavailing. *See*, *e.g.*, Connett, 340 F.3d at 874 (noting that a reviewing court is "constrained to review the reasons the ALJ asserts," and an ALJ's decision cannot be affirmed on the basis of

consulting records[,] . . . at least not on a consistent basis and on repeated physical examinations"; (2) the assessments from the neurological consultative examiner and Disability Determination Services ("DDS") medical consultants "are more consistent with the objective findings and clinical evidence" in the medical record than those of the treating physicians; and (3) the frequency of plaintiff's multiple sclerosis exacerbations[10] "has decreased significantly since 2006 . . . [which] indicates that [plaintiff's] [multiple sclerosis] has been well controlled with medication and the medication is effective." (A.R. 21-22.)

As an initial matter, and as plaintiff properly argues, the ALJ's reasoning suggests "a lack of acquaintance with multiple sclerosis." (Joint Stip. at 6.) Multiple sclerosis is a progressively disabling condition characterized by periods of remission and exacerbation. Estes v. R.R. Ret. Bd., 776 F.2d 1436, 1437 (9th Cir. 1985). The Ninth Circuit has recognized that "multiple sclerosis can be disabling notwithstanding normal activity in periods of remission." *Id*. at 1438. As the Ninth Circuit observed:

---

evidence he did not discuss); Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)(an agency decision cannot be affirmed on the basis of a ground that the agency did not invoke in making its decision); *see also* Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996)(remand is appropriate when a decision does not adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," because "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council")(citation omitted).

[10] In the Joint Stipulation, defendant refers to the exacerbations as "flare-ups." (Joint Stip. at 9.) However, as the ALJ and medical record indicate, these periods are more commonly referred to as "exacerbations."

11

> [m]ultiple sclerosis is an incurable progressive disease subject to such periods of remission and exacerbation. . . . Because [the period when petitioner worked and attended school] was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this *brief and temporary interruption of plaintiff's progressively disabling condition*. Rather, he should have considered that time-span as merely a period of remission in a continuing disability . . . .

*Id.* (*quoting* Parish v. Califano, 642 F.2d 188, 193 (6th Cir. 1981). Plaintiff's medical record reflects that she has experienced the waxing and waning of symptoms typical of multiple sclerosis.

The ALJ's first ground for rejecting plaintiff's treating physicians' opinions is not convincing. Although the ALJ asserts that Dr. Janumpally's and Dr. Lee's assessments of plaintiff's limitations are not supported by the medical record on a consistent basis,[8] at least from January 2005 through October 2006, the medical record is replete with notations of periods of time in which plaintiff experienced, consistent with the episodic nature of multiple sclerosis, exacerbated

---

[8] Specifically, the ALJ stated that "[t]he record shows that [plaintiff] was diagnosed with [multiple sclerosis] in January 2005 and had two acute 'exacerbations' of [multiple sclerosis] in 2005, four 'exacerbations' in 2006, one 'exacerbation' in 2007, and none in 2008 [through July]. However, all of the 'exacerbations' follow a pattern of presentation to the emergency room/hospital with [a] cluster of varied complaints . . . that were treated with Solu-Medrol infusion and that resolved by the time of discharge or at the follow up examination shortly following discharge. The follow up examinations and the neurological consultative examination do not show ongoing weakness of the upper or lower extremities or difficulty with balance or ambulation." (A.R. 22.)

12

symptoms. *See* A.R. 348 (1/19/05 -- plaintiff presented to Western Arizona Regional Medical Center with "[b]lurred vision, numbness of the face and problems walking," and the record notes that plaintiff has "a history of six months of intermittent bilateral arm and hand numbness [and] comes with facial numbness, blurred vision and problems walking on and off since yesterday at 2 p.m."); A.R. 370 (1/19/05 -- MRI impression: "multiple focal areas of increased signal intensity seen in the cerebral cortical white matter bilaterally; . . . a demyelinating process would be a consideration in this relatively young individual who is not known to have hypertention or hypertensive episodes"); A.R. 307 (2/18/05 -- physical examination of plaintiff revealed, *inter alia*, that plaintiff had difficulty with Romberg's sign and tandem gait); A.R. 308 (4/15/05 -- plaintiff told Dr. Lee that "she had one episode of numbness and tingling for about three days"); A.R. 304-05 (7/31/05 -- plaintiff presented to the emergency room complaining of "leg numbness and back pain for about two weeks," and physical examination of plaintiff revealed, *inter alia*: (1) "[d]ecreased strength in both hands, a little worse on the right than on the left and decreased sensation on the right as well"; and (2) "decreased toe strength bilaterally and decreased sensation to the right face"); A.R. 475 (12/8/05 -- phone message left by plaintiff indicated that she "[c]annot move arms having pain from MS wants Motrin 800 mg or something that won't knock her out"); A.R. 291 (1/9/06 -- plaintiff presented to the emergency room, because she started having numbness in the face, inability to walk, and she fell down and was unable to get up; a physical examination revealed that plaintiff had significant ataxia[12]); A.R. 190-92 (3/26/06 -- plaintiff

---

[12] Ataxia is "[a]n inability to coordinate muscle activity during voluntary movement; most often results from disorders of the cerebellum or the posterior columns of the spinal cord; may involve the limbs,

13

presented to the emergency room with "pain in hands [and] legs, [and] facial numbness"; a physical examination indicated, *inter alia*, that plaintiff had unsteady gait); A.R. 200-05 (7/17/06 -- plaintiff presented to the emergency room due to "a three-day history of increasing weakness," coupled with feeling "off balance, crush sensation to body, numb to face and [plaintiff] denies any trauma"; a physical examination revealed, *inter alia*, that plaintiff's "muscle strength is depressed in the lower extremities" and "[plaintiff] is unsteady with standing"); A.R. 218-21 (10/13/06 -- plaintiff presented to the emergency room complaining of "severe low back pain associated with feeling off balance and numbness of the face and legs"; a physical examination revealed, *inter alia*: (1) "motor strength of the extremities show moderately decreased strength in both extensor and flexor muscles of the leg and hips"; and (2) "[plaintiff] is barely able to stand and can do so only with physical assistance").

Moreover, contrary to the ALJ's assertion, the treating physicians' opinions are supported by plaintiff's treatment. While the ALJ generally asserts that the treating physicians' opinions are not supported by plaintiff's treatment, he does not give specific examples as to *how* the treating physicians' opinions are inconsistent with plaintiff's treatment. The medical record reveals that plaintiff has been on Copaxone consistently throughout the period of time in which the treating physicians have overseen her care. (A.R. 168, 204, 224, 291, 306, 471.) Plaintiff has also been given Solu-Medrol[13] intravenously to

---

head, or trunk." http://dictionary.webmd.com/terms/ataxia.

[13] Solu-Medrol "decreases your body's natural defensive response and reduce symptoms such as swelling and allergic-type reactions." http://www.webmd.com/drugs/drug-6135-Solu-Medrol+Inj.aspz?drugid=6135&drugname

suppress the multiple sclerosis symptoms exhibited during periods of exacerbation. (A.R. 193, 222, 292, 304, 374.) Plaintiff has also received various prescription medications to control the pain caused by periods of exacerbation of her multiple sclerosis, such as, *inter alia*, Demerol (A.R. 292), Phenergan (*Id*), Morphine (A.R. 192, 218, 401), pulse steroid therapy (A.R. 193), Flexeril (A.R. 222), and Vicodin (*id.*).

The medical record contains numerous notations describing plaintiff's symptoms, treatment, and objective clinical findings that support the treating physicians' opinions. Accordingly, ALJ's first ground cannot constitute a specific and legitimate reason for rejecting the treating physicians' opinions.

The ALJ's second ground for rejecting the treating physicians' opinions -- namely, because he adopts, instead, the opinions of Dr. Kim and the non-examining medical consultants -- is misguided and improper. Critically, although neither party discusses this, Dr. Kim[14] noted that

---

=Solu-Medrol+Inj.

[14] On September 30, 2006, Dr. Kim performed a physical examination of plaintiff and indicated that plaintiff "is able to get out of her chair and ambulate to the exam room without difficulty. [Plaintiff] has no problem getting on or off the examination table or lying down in the supine position." (A.R. 388-89.) Furthermore, Dr. Kim noted, *inter alia*, that plaintiff "is able to do finger-to-nose and heel-knee-shin bilaterally. [Plaintiff] has difficulty with fine finger movements bilaterally. [Plaintiff's] gait is normal. Romberg is absent . . . . [Plaintiff's] sensory exam [showed] [d]ecreased to light touch and pinprick in the bilateral lower extremities with the right being worse than the left up to the knees." (A.R. 389-90.)

Dr. Kim's diagnosis was "[p]robable multiple sclerosis." (A.R. 391.) Dr. Kim opined that plaintiff "has on examination objective findings to support the claim of the diagnosis of multiple sclerosis. [Plaintiff's] history is consistent with multiple sclerosis giving [sic] the multiple attacks over the past 1-1/2 years." (*Id.*)

15

"[t]here were no records provided for review" at the time of his consultative examination of plaintiff. (A.R. 388.) Dr. Kim, therefore, based his assessment on an incomplete picture of plaintiff's condition. *See* 20 C.F.R. §§ 404.1517, 416.917 ("If we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition."); <u>Nalley v. Apfel</u>, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, *all* the available medical records should be reviewed by the examiner"). Dr. Kim's opinion, thus, did not meet the Commissioner's regulation requirements. <u>Hurstrom v. Barnhart</u>, 233 F. Supp. 2d 1159, 1166 (S.D. Iowa 2002)("There is no indication that either [consultative physician] had access to any of the medical records which were available at the time of their examinations. . . . Even if Plaintiff told the consulting doctors that he had no limitations, these statements are not credible in light of the numerous laboratory reports showing that his blood sugar is out of control."); <u>Ladue v. Chater</u>, 1996 U.S. Dist. LEXIS 2094, 1996 WL 83880, at *5 (N.D. Cal. 1996)(remanding when "[t]he ALJ failed to conform to 20 C.F.R. §§ 404.1517, 416.917 requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition" in a case in which the consultative examiner "was provided with only one progress note from Kaiser," and the court found that "it

---

Dr. Kim's functional assessment indicated that plaintiff: can stand and walk in an eight-hour workday with normal breaks for about six hours due to bilateral lower extremity numbness; has no restrictions with sitting; can lift or carry 10 pounds frequently and 20 pounds occasionally; should avoid frequent bending, stooping, or crouching; has bilateral lower extremity numbness which affects her proprioception and could possibly make her off balance; should avoid frequent feeling, grasping, and fingering, given the bilateral hand dysmetria; and should not be placed in a workplace environment where she is exposed to extreme heat, given that elevated temperatures affect her multiple sclerosis. (A.R. 391-92.)

16

appears from the record that the ALJ gave [the] consultative report considerable weight, even though [the consultative examiner] was lacking important background information regarding plaintiff").

Consequently, because Dr. Kim assessed plaintiff's residual functional capacity without reviewing her complete medical records, the Court cannot conclude that Dr. Kim's opinion constitutes substantial evidence. *See* 20 C.F.R. §§ 404.1545(a), 416.9459(a) (a claimant's residual functional capacity is an assessment based upon all of the relevant evidence); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)(medical expert opinions constitute substantial evidence only when they are supported by the record and consistent with it). Moreover, Dr. Kim's September 2006 assessment is a one-time physical examination of plaintiff. Dr. Kim's assessment is based on a snapshot of plaintiff's condition, and given the episodic nature of multiple sclerosis, the ALJ's decision to give controlling weight to Dr. Kim's opinion, which was not based on a review of plaintiff's complete medical record, constitutes error.[15]

In addition, the ALJ failed to set forth any legally tenable basis for his decision to give "greater weight" to the DDS medical consultant's opinions. (A.R. 22.) A DDS medical consultant provided an initial RFC assessment on October 23, 2006 (A.R. 431-435), which was affirmed by a second DDS medical consultant on April 13, 2007 (A.R.

---

[15] Plaintiff is correct in her assertion that "[t]he fact that the ALJ can point to instances where [plaintiff's] condition may have waxed and waned (A.R. 20-21) does not detract from the opinions of Dr. Lee and Dr. Janumpally . . . ." (Joint Stip. at 6.) Multiple sclerosis, plainly, is a disease subject to periods of remission and exacerbation.

17

452).¹ The initial DDS medical consultant's opinion was a "check the box" form. (A.R. 431-35.) As plaintiff correctly asserted, a "non-examining opinion is even less weighty whereas here [sic] it is contained in a 'check the box' form." (Joint Stip. at 8; *citing* Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983)(expressing preference for individualized medical opinions over check-off reports).)

It does appear, however, that plaintiff's multiple sclerosis symptoms have decreased since November 2006. Thus, the ALJ's assertion that plaintiff's multiple sclerosis exacerbations "decreased significantly" from November 2006 and continuing through July 2008 appears to be correct. (A.R. 22.)² From November 2006 through July 2008, there does not appear to be evidence of exacerbations that would have precluded plaintiff from working. However, this does not detract from the ALJ's improper evaluation of plaintiff's ability to work during

---

¹ The DDS medical consultants indicated that plaintiff: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk about six hours in an eight-hour workday; is limited in her lower extremities in her ability to push and/or pull; can occasionally climb, balance, stoop, kneel, crouch and crawl; is limited in reaching in all directions, handling, fingering, and feeling; should avoid all exposure to extreme cold and heat; and should avoid concentrated exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards. (A.R. 431-435, 452.) Although the ALJ indicated that the DDS medical consultants assessed plaintiff with the RFC to "sit 6 hours in an 8-hour workday," the DDS medical consultants did not, in fact, provide an assessment of plaintiff's sitting limitations. (A.R. 20, 432.)

² *See* A.R. 492 (10/22/07 -- plaintiff was hospitalized for multiple sclerosis flare-up); A.R. 469 (11/9/07 -- during a follow-up visit with Dr. Janumpally, plaintiff complained of her multiple sclerosis symptoms, specifically indicating that she experienced a three-day multiple sclerosis exacerbation. Dr. Janumpally prescribed Celexa 10 mg); A.R. 467 (2/18/08 -- plaintiff followed up with Dr. Janumpally; Dr. Janumpally noted that plaintiff's neurological examination was unremarkable and that plaintiff was ambulating independently; Dr. Janumpally also noted that plaintiff's body was "spastic").

the period from January 2005 through October 2006. Accordingly, on remand, the ALJ must determine if plaintiff was disabled for a continuous period of 12 months or more from January 2005 through October 2006.

For all the aforementioned reasons, the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting the opinions of plaintiff's treating physicians. This failure constitutes reversible error.

**II. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether the remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for

further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand is appropriate to remedy defects in the record).

On remand, the ALJ must correct the above-mentioned deficiencies and errors, and, if appropriate, further develop the record regarding whether plaintiff is entitled to benefits for a period of disability in the 2005-2006 period.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 29, 2011

/s/ Margaret A. Nagle
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE